UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YVONNE HEPPELL-
LIBSANSKY,

     Plaintiff,

vs.                                    **Case No. 8:04-CV-416-T-17EAJ**

JO ANNE B. BARNHART,
Commissioner of
Social Security,

     Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

     Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her claim for Period of Disability and Disability Insurance Benefits (DIB) under the Act.[1]

     The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.[2]

---

[1] The district court has referred this matter to the undersigned for consideration and a Report and Recommendation. <u>See</u> Local Rules 6.01(b) and 6.01(c), M.D. Fla.

[2] Two copies of the administrative record were filed in this case. Initially, the record was filed in conjunction with Defendant's answer (Dkt. 5). Thereafter, Defendant filed a notice that a second transcript was filed (Dkt. 8). According to Defendant's counsel, the table of contents in the first copy of the

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff alleges an onset of disability on April 10, 1995 due

transcript was incorrectly drafted. Accordingly, all transcript cites refer to the second copy of the transcript, filed August 30, 2004 (Dkt. 8).

to fibromyalgia, depression, hypothyroidism, and arthritis.[3] (T
439) Fifty-two years old at the time of the ALJ's decision on June
25, 2002, Plaintiff has a college degree in elementary education,
and prior work experience as a pharmacy assistant and substitute
teacher. (T 439)  A hearing was held before the ALJ on May 21,
2002. (T 466)

In the June 25, 2002 decision denying benefits, the ALJ found
that Plaintiff had not engaged in substantial gainful activity
since her alleged onset date and that she met the insured
requirements of the Act only through December 31, 2000. (T 450)  In
addition, the ALJ found that Plaintiff's fibromyalgia and
depression were severe impairments but that her thyroid condition
and gastroesophageal reflux disease were not severe. (T 450)
Further, the ALJ determined that Plaintiff's impairments did not
meet or equal an impairment listed in Appendix 1, Subpart P,
Regulations No. 4.  (Id.)  In addition, the ALJ found that
Plaintiff's testimony was not entirely credible. (Id.)  The ALJ

---

[3] Plaintiff initially filed an application for benefits on
April 24, 1995.  The application was denied and no further action
was taken.  Plaintiff filed a second application for benefits on
October 31, 1996, with an alleged onset date of April 10, 1995.
The second application was denied in an opinion dated July 31,
1998.  Plaintiff appealed the second denial of benefits, and the
district court entered an order remanding her claim.  Accordingly,
a de novo administrative hearing was held on May 21, 2001.  The
instant case results from Plaintiff's appeal of the June 25, 2002
opinion of the ALJ denying benefits.  Plaintiff also states that
she appeals the February 24, 2004 decision of the Appeals Council
denying review of the June 25, 2002 decision denying benefits.

3

determined that Plaintiff is not able to perform her past relevant work. (T 451) However, the ALJ determined that as of December 31, 2000, Plaintiff retained the residual functional capacity (RFC) "to occasionally lift and carry up to twenty pounds and frequently lift and carry up to ten pounds with the additional requirement of a sit/stand option.  She was further limited to simple repetitive tasks in unskilled and low end semi skilled positions." (T 450) Utilizing the testimony of a Vocational Expert and the Medical-Vocational Rules 201.21 and 201.22, the ALJ found that a significant number of jobs existed in the national economy which Plaintiff could perform, including: file clerk, mail clerk, and general office clerk. (T 451)  Thus, the ALJ denied Plaintiff's claim for disability benefits.  (Id.)

The Appeals Council denied Plaintiff's request for review and allowed the ALJ's decision to stand after making additional findings. (T 398-401)

Plaintiff states that the Commissioner erred by (1) failing to abide by a court order which required the ALJ to evaluate the opinions of medical sources as well as the opinions of the State Agency reviewing practitioners; (2) failing to evaluate post-hearing evidence; (3) failing to give proper weight to the opinions of treating physicians; (4) failing to properly consider Plaintiff's impairments singularly and in combination; (5) posing an incomplete and inaccurate hypothetical question to the

4

Vocational Expert ("VE"); and (6) relying on an improperly formulated opinion of the VE. Plaintiff also argues that a remand is warranted under sentence six of 42 U.S.C. § 405(g) due to the submission of new evidence.

For the reasons set forth below, the decision of the Commissioner should be affirmed.

Most of the medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

A summary of this court's remand order is appropriate before discussing the issues presented. On March 25, 2001, pursuant to a motion filed by the Commissioner, the district court remanded this case administratively for the Commissioner to:

> Further evaluate the medical source opinions of record, including those of Dr. Herrero, Dr. Smitherman, Dr. Bursten, and the state agency reviewing practitioners. After further consideration of the evidentiary record and the medical source opinions, the Administrative Law Judge will also revisit the issue of Plaintiff's residual functional capacity, including both exertional and nonexertional limitations, and upon resolution of that issue, will determine whether Plaintiff has the capacity to do her past relevant work or, as necessary, other work in the national economy. Evidence from a vocational expert will be obtained if necessary.

(T 522) Ordinarily, a request to remand for consideration of new evidence under sentence six of 42 U.S.C. § 405(g) would be first addressed. However, the issues relating to the Commissioner's

alleged non-compliance with the court's March 25, 2001 remand order deserve initial review.  These are the first three issues numbered above which concern the Commissioner's evaluation of medical source evidence from treating and examining physicians as well as non-examining state agency physicians.

**A.**   Plaintiff contends that the ALJ failed to evaluate properly the opinions of Luis A. Herrero, M.D., ("Dr. Herrero"), Mark H. Smitherman, M.D., ("Dr. Smitherman"), Susan Fraser, M.D. ("Dr. Fraser") and Peter Bursten, Ph.D., ("Dr. Bursten").   It is undisputed that the first three medical sources are treating physicians; Dr. Bursten performed a consultative psychological examination and is not a treating physician.[4] (T 445; 292)

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject such an opinion.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).  However, the opinion of a treating physician regarding a disability or inability to work may be discounted if it is unsupported by objective medical evidence, conclusory, or contrary to the evidence.  Bloodsworth, 703 F.2d at 1240; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).

---

[4] Dr. Bursten performed one psychological consultative examination of Plaintiff on January 7, 1997. (T 292-294) In the June 25, 2002 decision denying benefits, the ALJ stated that Dr. Bursten completed a second psychological consultative examination of Plaintiff.  (T 445) The undersigned was not able to locate in the administrative record the second consultative examination completed by Dr. Bursten.

The ALJ discussed Plaintiff's medical history with Dr. Herrero, a neuropsychologist, who treated Plaintiff for pain management and depression from 1991 through June 1995. (T 440-41 118-165) After a thorough discussion, the ALJ assigned little weight to Dr. Herrero's opinions.

Dr. Herrero opined on June 30, 1995, that Plaintiff was unable to work and that he doubted that Plaintiff would "ever be able to return to gainful employment." (T 118; 440) On June 30, 1995, Dr. Herrero answered a treating Psychiatrist/Psychologist Mental Health Report which stated that Plaintiff's prognosis for fibromyalgia and chronic pain was "poor" and the prognosis for chronic depression and hypothyroidism was "fair".[5] He said that Plaintiff could not perform repetitive tasks or stand for extended periods of time, that she had severe pain and weakness, and that her physical condition had deteriorated over the past four years. (T 119-121)

While crediting Dr. Herrero's opinions that Plaintiff's fibromyalgia "resulted in physical and mental symptoms," (T 440) the ALJ did not accord the physician's opinions as to disability controlling weight for the following reasons: Dr. Herrero's last treatment of Plaintiff "occurred only two months after her alleged disability onset date" and "additional evidence" indicated that

---

[5] Dr. Herrero provided a number of clinical findings supporting his diagnosis. (T 120)

Plaintiff's condition "showed periods of improvement." (T 440-41)[6]

Plaintiff's memorandum of law states that: "It is inconceivable how anyone could claim to evaluate Dr. Herrero's opinion when an important fact is left out that Dr. Herrero, the longtime treating psychiatrist for Ms. Libsansky, had her hospitalized in 1991 for two weeks due to her psychiatric condition." (Dkt. 12 at 3) It is true that the ALJ did not mention the 1991 hospitalization in discussing Dr. Herrero's opinion. However, the ALJ referred to this elsewhere in the decision.[7]

The ALJ did state that Plaintiff had fluctuating periods of depression throughout 1991 which generally resolved within a short period of time. (T 440)[8]   In any event, Plaintiff's disability onset was some four years later, and Plaintiff has not shown that the ALJ's findings regarding her 1991 treatment with Dr. Herrero were in error.   As for the ALJ's non-specific reference to additional evidence of periods of improvement for Plaintiff, it is difficult to determine what evidence the ALJ meant and whether it

---

[6] The ALJ also noted that the issue of disability is reserved for the Commissioner. (T 441)

[7] The decision notes that Plaintiff described a 1991 psychiatric hospitalization when she underwent a psychological evaluation in 1997. (T 445)

[8] The exhibit and page numbers cited by the ALJ for this finding are the progress notes for Dr. Herrero for 1991. (T 153-158)  They do not refer to a two week hospitalization and Plaintiff provides no record cite for this evidence.   The court notes a single reference in Dr. Herrero's notes for October 21, 1991; "Hospitalized." (T 149)

concerned the period of time when Plaintiff was under Dr. Herrero's care or during a subsequent period of time.[9]  Despite the ALJ's somewhat vague discussion of periods of improvement under Dr. Herrero's care, it is clear that the ALJ properly considered Dr. Herrero's opinions concerning Plaintiff's impairments and appropriately accorded less than controlling weight to his opinions.

Plaintiff also argues that the ALJ failed to further evaluate the opinions of Dr. Smitherman, as ordered in the decision remanding the case, and also that the ALJ improperly failed to give controlling weight to the opinion of this treating physician.

According to the ALJ, Dr. Smitherman treated Plaintiff for hypothyroidism and periodic flare-ups of fibromyalgia between July 1994 and February 1997 and January 2000 through February 2002. (T 442) The ALJ summarized the progress notes for Plaintiff's visits during these periods of time. (T 442; 444)

---

[9] The record does contain several progress notes authored by Dr. Herrero which document periods of improvement and mental stability while Plaintiff was under this physician's care.  On June 30, 1995, Dr. Herrero noted: "Patient presented . . . pleasant and cooperative.  Since her previous visit, she states her mood is a little better.  Her affect is brighter . . ." (T 118).  On June 1, 1994, Dr. Herrero wrote, "Patient is feeling a little better, stronger physically, not as depressed since her increase in Zoloft." (T 123) He noted that Plaintiff's pain was "bearable." (Id.)  On June 28, 1993, Dr. Herrero reported: "Her mood is less depressed, her affect is bright, and she is getting along quite well at work." (T 124) In addition, in a letter dated November 8, 1991, Dr. Herrero stated, "Please be advised of my opinion that [Plaintiff] may return to work on Monday November 11, 1991 without restriction." (T 165)

Plaintiff faults the ALJ for not indicating what weight he accorded Dr. Smitherman's findings and points out that it was this physician who raised the issue of Plaintiff's applying for disability benefits. (T 333)[10]

However, Plaintiff has failed to point to evidence, apart from Dr. Smitherman's April 1995 statement that Plaintiff might not be able to continue working at a "full-time pace" (T 333), that Dr. Smitherman ever provided any functional limitations. The ALJ noted Dr. Smitherman's comment and stated:

> Dr. Smitherman suggested that the claimant might not be capable of full-time work, but did not rule out her ability to perform part-time work activity. Nor did he give a definitive statement that claimant was unable to work. Rather it appears he left it up to her discretion because he noted that "it seems as if she is going to have to see about making a decision as to whether she can continue working."

(T 442)

Plaintiff has cited no other medical findings of Dr. Smitherman relative to Plaintiff's alleged disability. The ALJ fully discussed the physician's observations and drew a conclusion from the evidence which is not unreasonable.

The reviewing court is not to re-weigh the evidence or

---

[10] On April 17, 1995, Dr. Smitherman authored a progress note which states in part: "At this point I think it seems as if she is going to have to see about making a decision as to whether she feels she can continue to work. She has looked into disability and I must admit it seems as if this has been a very taxing thing for her and I am not sure she is capable of continuing, at least not at a full-time pace." (T 333)

substitute its judgment for that of the Secretary; instead, the reviewing court reviews the entire record in order to determine whether "the decision reached is reasonable and supported by substantial evidence." Bloodsworth, 703 F.2d at 1239 (citations omitted); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence").

Finally, Plaintiff claims that the ALJ did not state the weight given to the opinions of Dr. Fraser who saw Plaintiff in May 1998, as well as on other occasions, and provided a diagnosis of undifferentiated connective tissue disease, with inflammatory arthritis, fibromyalgia, bilateral trochanteric bursitis, enthesitis of the hips, and possible early hip osteoarthritis.[11] (T 600)[12]

Dr. Fraser, a rheumatologist, treated Plaintiff during 1998 and 1999. Other than Dr. Fraser's May 1998 report, Plaintiff notes no other medical findings of Dr. Fraser and points to no evidence that Dr. Fraser provided any functional limitations. The ALJ fully

---

[11] Dr. Fraser treated Plaintiff in May 1998 (T 600-601), August 1998 (T 442), November 1998 (T 443; 598), February 1999 (T 443; 597), and June and September 1999 (T 443; 594).

[12] Although Plaintiff refers to the opinions of Peter Bursten, Ph.D., she does not develop the argument as to this medical source. The ALJ fully evaluated Dr. Bursten's findings in his decision. (T 445)

discussed Dr. Fraser's medical records.[13]   Finding Plaintiff's fibromyalgia to be a severe impairment reflects proper consideration of the views of Drs. Smitherman and Fraser.

Accordingly, Plaintiff's argument that the ALJ failed to properly consider Drs. Herrero, Smitherman, Bursten and Fraser is without merit.

**B.**   Plaintiff also contends that the ALJ received but overlooked post-hearing medical evidence from Leslie Goodman, M.D. ("Dr. Goodman") and Michael Eastridge, M.D. ("Dr. Eastridge").

Contrary to Plaintiff's assertion that the new submissions were overlooked, (Dkt. 12 at 5) the Appeals Council did address the statements of Drs. Eastridge and Goodman and expressly found that there was no evidence that these two statements were received by the prior to the ALJ's decision. (T 398) Therefore, this issue is without merit.[14]

---

[13] As noted by the ALJ, Plaintiff began seeing Dr. Fraser after leaving Dr. Smitherman's care.

[14] The February 24, 2004 decision issued by the Appeals Council commented on the evidence at issue and stated:

> Your attorney wrote to Dr. Eastridge on May 28, 2002 and asked if he felt that, based upon your history, you would have been as limited in April 1995; he wrote a similar letter to Dr. Goodman on November 6, 2002.  Both answered affirmatively.  However, the record shows that neither was treating you at that time or for several years thereafter, and thus their opinions in this regard merit little weight.

(T 398)

12

Plaintiff also argues that the remark of Dr. Goodman constitutes new evidence under sentence six of 42 U.S.C. § 405(g) and that a remand is warranted.  Plaintiff's arguments with regard to a "sentence six" remand are discussed <u>infra</u>.

**C.**   Plaintiff further contends that the ALJ did not evaluate the combined effects of her impairments.

The ALJ considered the combined effect of Plaintiff's impairments, as evidenced by his written decision.  The ALJ noted in his decision that he was charged with determining "whether the claimant has a severe impairment or combination of impairments." (T 439) Similar language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1076 (11th Cir. 1986).  In addition, the ALJ stated that he rendered his decision only after "reviewing all of the evidence of record" and giving "careful consideration of the entire record."  (T 439; 448)

Accordingly, Plaintiff's argument that the ALJ failed to consider her impairments both singularly and in full combination is without merit.

**D.**   Plaintiff also argues that the ALJ propounded an incomplete hypothetical question to the VE and that the ALJ improperly relied on the testimony of the VE based upon the incomplete hypothetical. A VE's testimony constitutes substantial evidence only where the hypothetical question posed by the ALJ comprises all of the

13

restrictions imposed by the claimant's impairments. <u>Pendley v.</u>
<u>Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985)(a hypothetical
question posed to the VE must include each of a plaintiff's
impairments in order to sustain a finding by an ALJ based on the
VE's testimony).

However, an ALJ is not required to include in the hypothetical
question limitations that he finds unsupported in the record or not
credible. <u>See</u> <u>Callahan v. Barnhart</u>, 186 F. Supp. 2d 1219, 1229
(M.D. Fla. 2002) (citations omitted).

In the instant case, the ALJ determined in a very thorough
opinion that Plaintiff has the severe impairments of fibromyalgia
and depression. (T 450, finding 4)   The ALJ also found that
Plaintiff's other impairments of a thyroid condition and
gastroesophageal reflux disease are not severe impairments. (<u>Id.</u>)
In addition, the ALJ found that Plaintiff's complaints with regards
to pain and other subjective symptoms were not entirely credible.
(T 447, 450) Plaintiff has not challenged the ALJ's credibility
analysis.

After evaluating the reports of several physicians and taking
into consideration Plaintiff's own statements and the entirety of
the record, the ALJ formulated Plaintiff's RFC. (T 447-448)   The
ALJ found that Plaintiff had the RFC to perform a significant range
of light work. (T 451, finding 13).  Specifically, the ALJ stated
that as of Plaintiff's date last insured of December 31, 2000,

14

Plaintiff had the RFC to "occasionally lift and carry up to twenty pounds and frequently lift and carry up to ten pounds with the additional requirement of a sit/stand option.   She is further limited to simple repetitive tasks on an unskilled and low-end semi skilled positions." (T 448) After articulating Plaintiff's RFC, the ALJ noted that Plaintiff's RFC included "additional weight limitations" as well as sit/stand option "in consideration of the claimant's subjective reports of difficulty sitting for prolonged periods." (Id.)

Plaintiff argues that the ALJ neglected to inform the VE that Plaintiff suffered from pain, connective tissue disease, and the side effects of medication.  The ALJ did not include Plaintiff's subjective complaints, including complaints regarding the side effects of medication, in the hypothetical questions to the VE because the ALJ discredited Plaintiff's subjective complaints.[15]

---

[15] The ALJ discussed Plaintiff's subjective complaints, including the side effects of medication such as upset stomach and fatigue, in the decision denying benefits. (T 447)  However, the ALJ determined that Plaintiff's subjective complaints, which would include side effects from medication, were not entirely credible. The ALJ noted that Plaintiff "is capable of performing most daily chores such as cooking, grocery shopping and light housework with some assistance from her husband.  She is also able to manage her finances, care for her needs and generally gets along well with others." (T 448) In addition, the ALJ described the manner in which Plaintiff's testimony regarding her subjective complaints was contradicted by medical source opinions. (T 447) Accordingly, the ALJ found that Plaintiff's subjective complaints were not entirely credible.  See Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989)(the ALJ properly determined that a plaintiff's subjective complaints were not fully credible after stating three specific reasons for discrediting that plaintiff's complains which were

In addition, Plaintiff cites no evidence that she reported any side effects of medication to her physicians.[16]

As noted, the ALJ found that Plaintiff suffers from the severe impairments of fibromyalgia and depression. (T 450)  The vocational restrictions enumerated in the RFC, such as limiting Plaintiff to light work of a simple and repetitive nature as well as limiting the weight Plaintiff can lift, are commensurate with the problems associated with Plaintiff's credible impairments.[17]

In addition, the Plaintiff argues that the ALJ improperly added a sit/stand option to the hypothetical posed to the VE. Referencing Social Security Ruling 83-12, Plaintiff argues that the inclusion of a sit/stand option in her RFC was inappropriate because the Social Security Rulings provide that a sit/stand option is "generally only for management and professional people." (Dkt.

---

borne out in the record).

[16] Absent some reference to side effects of medication in the treatment notes, it was not error for the ALJ to discount Plaintiff's testimony on this issue in determining Plaintiff's RFC. Compare MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)(Commissioner erred in not considering medication side effects where claimant's physician testified that medication could affect plaintiff's ability to work).

[17] In addition, Plaintiff argues that the VE failed to follow the rules of the Social Security Administration by imposing "her own standard" (Dkt. 12 at 18).  This is a unique, but unpersuasive argument.  The transcript of the hearing reflects that the VE responded appropriately to the questions posed by the VE and was also questioned by Plaintiff's counsel.

12 at 18).[18] The cited Social Security Ruling does discuss the sit/stand option; however, the Social Security Administration's rulings are not binding on this court.  See Fair v. Shalala, 37 F.3d 1466, 1469 (11th Cir. 1994); B.B. ex. rel. A. L. B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. Unit B April 1981). In addition, the ALJ determined that Plaintiff had the RFC to work as a file clerk, mail clerk, and general office clerk. It seems as though the tasks associated with these jobs could be accomplished while alternating sitting and standing.[19]  Plaintiff's argument would be more persuasive if the ALJ had determined that Plaintiff was capable of working in an assembly line or other industrial setting.   Thus, Plaintiff's argument that the inclusion of a

---

[18] Social Security Ruling 83-12 states with regard to the sit/stand option:

> There are some jobs in the national economy–typically professional and managerial ones–in which a person can sit or stand with a degree of choice.  If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled.  However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications of the occupational base.

[19] The ALJ noted in the June 25, 2002 decision denying benefits that "[a]ll three jobs allow for a sit/stand option and do not require the performance of any activities precluded by tge claimant's residual functional capacity." (T 449)

sit/stand option is inappropriate is without merit.

The ALJ's hypothetical questions propounded to the VE were supported by substantial evidence.  Therefore, Plaintiff's argument that a remand is warranted due to the content of the hypothetical questions and the ALJ's reliance on the VE's responses is without merit.

**E.**  Plaintiff contends that she submitted new evidence to the ALJ three weeks prior to the issuance of the decision denying benefits (subsequent to the administrative hearing) and that neither the ALJ nor the Appeals Council appropriately considered such evidence. Plaintiff argues that the evidence establishes that Plaintiff was disabled after the alleged onset date of April 10, 1995 and prior to the date last insured of December 31, 2000.

As noted _supra_, the Appeals Council reviewed two letters authored by Plaintiff's attorney and "checked-off" by Drs. Goodman and Eastridge. (T 398-400) The Appeals Council issued a decision on February 24, 2004 which stated that the two letters were not material and would not change the decision of the ALJ denying benefits. (T 398)  In addition, Plaintiff cursorily refers to several documents connected with Drs. Goodman and Eastridge in her argument that new evidence exists warranting a remand; however, with the exception of a single letter, Plaintiff fails to argue affirmatively that any such document meets the standard for a "sentence six" remand due to new evidence. (T 403)

18

To obtain a remand under sentence six of 42 U.S.C. 405(g), a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable possibility that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level.  Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988)(citation and internal quotation marks omitted).  The requirements are the same for a plaintiff arguing that evidence presented to the Appeals Council warrants a remand.  See Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999).

The single document which Plaintiff argues meets the above-listed elements is a November 6, 20002 letter authored by Plaintiff's attorney and addressed to Dr. Goodman.  The letter states as follows:

> Several months ago, you had filled out a physical capability form on the above named individual.  I would ask you whether you have felt that those same limitations and restrictions would have existed from the time that you first saw Ms. Libsansky to the current time.  I would ask that you would kindly indicate by checking the appropriate box below.

(T 403)  Dr. Goodman placed a checkmark next to the box accompanied by test stating "Yes, these limitations and restrictions which I previously filled out have been present since the first time that I saw Ms. Libsansky to the present time." (Id.)  The box that Dr. Goodman did not check was accompanied by text stating the opposite

19

conclusion: "No, these limitations . . . have not been present since the first time that I saw Ms. Libsansky to the present time. (Id.)

The above-quoted letter does not meet any of the above-listed elements.   It is not new and non-cumulative because it simply verifies that Dr. Goodman's impressions of Plaintiff have remained unchanged during the course of the physician's treatment of Plaintiff.  It is not necessary to proceed with the analysis of the short letter in question; however, it is clear that Plaintiff's letter is also not material and that there is no excuse for Plaintiff's failure to produce the letter at the administrative level.

The letter, containing one check-marked box, would not have changed the administrative result.  The letter asks the physician to speculate as to the state of Plaintiff during a time when the physician was not treating Plaintiff.   The ALJ accorded "great weight" to Dr. Goodman's opinions and noted that this physician "had a regular and ongoing treating relationship with the claimant." (Id.)  It does not appear that the inference to be drawn from the letter in question (that Plaintiff continues to suffer from impairments previously diagnosed by Dr. Goodman and that the impairments existed when Dr. Goodman initially treated Plaintiff) would have changed the ALJ's decision that Plaintiff is not disabled.   The court agrees with the decision of the Appeals

20

Council that the letter addressed to Dr. Goodman would not merit a change in the result of this case. (T 398)

Further, Plaintiff has failed to demonstrate good cause for her failure to submit the above letter at the administrative level. The letter in question was drafted by Plaintiff's attorney, not by Dr. Goodman. Plaintiff's attorney should not have waited until the eve of the administrative hearing to seek clarification from one of Plaintiff's physicians. Further, Plaintiff's case, in which she has been represented by counsel, has been pending since April 24, 1995, when Plaintiff filed for benefits. Plaintiff has had two administrative hearings in this case. As Defendant points out, "It appears based on the one page forms Plaintiff sent . . . that Plaintiff has made an attempt at scrambling for evidence after a bad hearing." (T 14 at 24).

Accordingly, Plaintiff's argument that a remand is warranted due to the submission of new evidence is without merit.

## Conclusion

Accordingly and upon consideration, it is **Recommended** that:

(1)  the decision of the Commissioner be **AFFIRMED**; and

(2)  the Clerk of Court be directed to enter final judgment in
     accordance with 42 U.S.C. § 405(g) and close the file, with

each party bearing his own costs and expenses.


ELIZABETH A JENKINS
United States Magistrate Judge


Dated: March 10, 2005.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings
and recommendations contained in this report within ten (10) days
from the date of this service shall bar an aggrieved party from
attacking the factual findings on appeal.   <u>See</u> 28 U.S.C.
636(b)(1).